By the Court.—Sanford, J.
The verdict for defendants must have been directed on the hypothesis, that, notwithstanding plaintiffs’ right of property and possession, and the wrongful taking and conversion of their goods by defendant’s sons, there was proof of such lawful possession in the defendant himself, as to render proof of demand and refusal indispensable to the maintenance of the action. The rule is well-settled that until demand and refusal, trover will not lie against an innocent bona-fide purchaser from a wrongdoer (Barrett v. Warren, 3 Hill, 348). But when the plaintiff’s title and an original tortious taking appear, the burthen is cast upon a purchaser to show that he is free from fault, and came to the possession of the property in a lawful manner, for a lawful purpose, and in perfect good faith. If he knew, or had any reason to suspect or believe that he was dealing with one who acquired the property unlawfully, he may then be treated as a wrongdoer, without any demand by the true owner (Pierce v. Van Dyck, 6 Hill, 613). His own protection from being held liable as a tortious taker depends upon his entire innocence and perfect good faith. His innocence and good faith being proved, he would be protected from such liability, and could not be charged in trespass de bonis asportatis, though he would still be liable to the true owner, in trover, or replevin in the detinet, after demand and refusal (Ely v. Ehle, 3 N. Y. 506). In this case, it clearly appeared that the defendant’s sons sold or assumed to sell to defendant, without color of authority or right, the plaintiffs’ property, together with other wood and merchandise, of which they were lawfully in possession, and which belonged to a firm .composed of themselves and the plaintiffs, in consideration of a pre-existing indebtedness of such firm. It further appeared that the firm was formed in December, 1871; that the logs and bolts in question had *80 been previously purchased and paid for by the plaintiffs ; that in February, 1872, they were lying on the beach at Cedar Keys, in the actual or constructive possession of the plaintiffs ; that, in that month, they were specifically pointed out to the defendant by one of the plaintiffs as their separate property, and that a conversation then occurred as to the disposition the plaintiffs proposed to make of them. One of the plaintiffs testifies that, in that month, he was one day walking on the beach at Cedar Keys with the defendant, where the logs were piled, and that the defendant then asked him whose wood it was. Witness replied that it belonged to F. and J. Cormier, the plaintiffs. The defendant asked what they were going to do with it, and was informed that as soon as a cheap freight could be had, the plaintiffs would ship it to New York. The property was susceptible of easy recognition and identification. It was plainly marked or branded with certain marks and letters, burned in with a steel stamp, viz., “F. & J. C.” in a diamond, “ C.” in a diamond, and “A. H. M.” Prior to their partnership with defendant’s sons, the plaintiff had used the brand “F. & J. C.” in a diamond, for a long time. The marks were generally placed on two sides of the logs, sometimes on three sides, and sometimes on both ends. These logs, with the other wood so purchased by defendant from his sons, were loaded “by his direction and for his account,” on board the schooner Sarah Cullen, and were brought to New York, where they were seen, and at once recognized and identified as their property, by the plaintiffs, before her cargo was discharged from the schooner.
This evidence, wholly uncontradicted, was, in my judgment, sufficient to raise a legal presumption against the good faith of the defendant in purchasing these logs from his sons, and put upon him the bur-then of showing, if he could, that he did not recognize *81 them as those pointed out to him by one of the plaintiffs at Cedar Keys, and did not know them to be the property of the plaintiffs ; or, he might have contradicted the testimony as to the whole conversation. But, uncontradicted and unexplained, the proof in regard to this conversation seems to me sufficient to raise the presumption, and to sustain a finding, of bad faith, and of notice, and of unlawful possession on the part of the defendant. The defendant’s points concede that if, at the time of the transfer and shipment, defendant had knowledge that the logs belonged to plaintiff, the action for tortious conversion can be maintained, and such is doubtless the law.
Again, a mere sale by a wrongdoer, without actual delivery, is insufficient to exonerate the purchaser from liability as a tortious taker. Trespass de bonis asportatis will.lie against the purchaser from a wrongdoer, who himself takes and removes the goods from the wrongdoer’s possession. In this case, as in that of Ely v. Ehle, above cited, there is no proof that the defendant’s sons ever did any other act in respect to the plaintiffs’ logs, which as we have seen, were piled up together on the beach, ready for shipment, than to enter into an illegal and unauthorized contract with defendant for their sale ; they did not deliver the logs to him, or, at least, there is no evidence of such delivery. The only testimony in regard to the transaction is that of one of defendant’s sons, to the effect that there was a sale to defendant, in May, 1872, of cedar wood, and goods in the store at Cedar Keys : and that such sale embraced these logs and bolts. In the case last cited, it was held, under like circumstances, that the6facts warranted the inference that defendant himself took and carried away the property, by virtue of his contract of sale, without any actual delivery being made, and that by taking and removing it, he became a trespasser, and that his taking was tortious, the ven *82 dor having no power to sell. There is no proof in this case, that the plaintiffs’ logs were ever moved or stirred, from the time when the defendant first examined them, in the presence of one of the plaintiffs, until they were taken and removed by the defendant. They were then actually or constructively in the possession of the plaintiffs, lying on the beach, ready for shipment. There they remained, so far as appears by the case, until they were seized upon and removed by defendant. The schooner on which they were placed was loaded by his direction, and for his account, and there is not a particle of evidence that the defendant’s sons ever touched the logs, or interfered with them in any way, except by wrongfully .assuming to contract for their sale. Except as affected by the contract, the situs of the property remained unchanged.
Under these circumstances, the defendant was himself a tortious taker, and liable to be proceeded against as such, irrespective of a demand upon him for the return of the goods.
If once liable as a tortious taker, the subsequent taking of the property by a receiver, appointed in a suit instituted by plaintiffs, and on their application and its restoration to defendant, by order of court on his giving security, did not exonerate him from such liability. Had he returned the property to plaintiff, his legal liability for damages would not have been discharged. The wrongful conversion is the gist of the action. “ If A. take the horse of B. and ride him, and after deliver him to B., yet may B. maintain trover against A., for the riding was a conversion, and the re-delivery will not bar the action, although it will go in mitigation of damages ” (Countess of Rutland’s Case, cited, 1 Rol. Abr. 5, L. 1; Brewster v. Siliman, 38 N. Y. 428). Had the defendant offered to return the goods, or tendered them, it was optional with the plaintiff to *83 refuse or receive them, and he might have recovered their value.
The record offered in evidence by the plaintiffs and excluded by the court, shows a former adjudication by the supreme court, in a suit to which plaintiffs and defendant were parties, both with respect to the title of the property now in controversy, and with respect to the defendant’s innocence and good faith, in making the purchase from his sons, under which he here claims to have acquired lawful possession of the plaintiffs’ logs. Those logs were embraced in that purchase ; and the question of their ownership, and that of the defendant’s good faith, in making the purchase, were both litigated in that suit, and, as appears by the record, were both determined in it adversely to the defendant. The record was therefore competent and material evidence upon both of these points. It was insisted, on the argument,- that it was, at most, only competent as showing plaintiffs’ ownership, and that this was immaterial, as the fact had already been adequately proved, and had not been rebutted. But evidence is not immaterial because it is cumulative ; and I deem the question of defendant’s good faith, in making the purchase which he invokes to shield him from the imputation of having tortiously taken the plaintiffs’ property, of essential materiality. That purchase was adjudged by the supreme court to have been made in bad faith, and to have been wholly fraudulent and void against the plaintiff, both with respect to the partnership property, and to the separate property of the plaintiffs now in question. In his answer, in that suit, the defendant claimed as his own the whole cargo of the Sarah Cullen, and insisted that he had a right to hold and retain it. He insisted on the validity of all transfers made to him by his sons. The court adjudged the property now in suit to be the property of the plaintiff, and held, that the sale to the *84 defendant in which it was embraced was fraudulently made, and with intent upon the part of the defendant and his sons to cheat and defraud the plaintiffs. Such an adjudication operates as an estoppel, and no principle has been suggested, upon which its inadmissibility, as evidence against the defendant, can be properly asserted.
The judgment should be reversed with costs.
Speir, J., concurred.